1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    DANIEL DAUWALDER,                          No.  1:25-cv-00665-SAB (PC)

12                 Plaintiff,                      ORDER DIRECTING CLERK OF COURT
                                                   TO RANDOMLY ASSIGN A DISTRICT
13         v.                                      JUDGE TO THIS ACTION

14    DANIEL MOELLER, et al.,                      FINDINGS AND RECOMMENDATIONS
                                                   RECOMMENDING DISMISSAL OF
15                                                 ACTION
                 Defendants.
16                                                 (ECF No. 15)

17

18         Plaintiff is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983.

19                                           **I.**

20                                     **BACKGROUND**

21         Plaintiff filed the instant complaint in this action on June 3, 2025.  (ECF No. 1.)

22         On October 3, 2025, the Court screened the Plaintiff's first amended complaint, found that

23    Plaintiff failed to state a cognizable claim for relief, and granted Plaintiff thirty days to file an

24    amended complaint.  (ECF No. 14.)

25         Plaintiff failed to file a second amended complaint or otherwise respond to the Court's

26    screening order.  Therefore, on November 14, 2025, the ordered Plaintiff to show cause why the

27    action should not be dismissed.  (ECF No. 15.)  Plaintiff has not filed a response and the time to

28    do so has passed.  Accordingly, the operative complaint is Plaintiff's first amended complaint,

                                              1

1  which fails to state a cognizable claim for relief and dismissal is warranted.

2  **II.**

3  **SCREENING REQUIREMENT**

4  The Court is required to screen complaints brought by prisoners seeking relief against a

5  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

6  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

7  "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that

8  "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

9  1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

10  A complaint must contain "a short and plain statement of the claim showing that the

11  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

12  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

13  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

14  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate

15  that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v.

16  Williams, 297 F.3d 930, 934 (9th Cir. 2002).

17  Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

18  liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d

19  1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be

20  facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer

21  that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss

22  v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant

23  has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's

24  liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d

25  at 969.

26  **III.**

27  **COMPLAINT ALLEGATIONS**

28  The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the

1    screening requirement under 28 U.S.C. § 1915.

2        Plaintiff contends that his due process rights were violated based on the inaccurate

3    calculation of his nonviolent parole eligibility release date.

4        On December 12, 2024, a nonviolent parole eligibility under Proposition 57 was

5    conducted and Plaintiff was scheduled to be released on February 11, 2025.

6        On February 10, 2025, less than 24 hours before Plaintiff was scheduled to be released on

7    parole, Plaintiff was delivered a determination vacating the prior determination of his eligibility

8    for release which was not based o n a good faith evaluation of the relevant case factors.  This

9    determination was in retaliation for filing numerous inmate grievances regarding corrupt staff and

10    staff misconduct.

11                                    **IV.**

12                                **DISCUSSION**

13        **A.        Proposition 57/Due Process**

14        "There is no constitutional or inherent right of a convicted person to be conditionally

15    released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr.

16    Complex, 442 U.S. 1, 7 (1979); see also Swarthout v. Cooke, 562 U.S. 216, 220 (2011) (per

17    curiam) ("There is no right under the Federal Constitution to be conditionally released before the

18    expiration of a valid sentence, and the States are under no duty to offer parole to their

19    prisoners."). While "[t]he Constitution does not, itself, guarantee a liberty interest in parole," "a

20    state's substantive parole scheme may create one that is enforceable under the Due Process

21    Clause." Miller v. Or. Bd. of Parole & Post Prison Supervision, 642 F.3d 711, 714 (9th Cir.

22    2011). Where "a State creates a liberty interest, the Due Process Clause requires fair procedures

23    for its vindication—and federal courts will review the application of those constitutionally

24    required procedures." Cooke, 562 U.S. at 220. In the context of parole, the required procedures

25    are minimal. Id. Due process only requires that the state furnish an inmate seeking parole with the

26    opportunity to be heard and a statement of the reasons why parole was denied. Id. (citing

27    Greenholtz, 442 U.S. at 16). The Constitution does not require more. Id.

28        As Plaintiff concedes, he received an early parole consideration hearing on December 13,

                                          3

1    2024, and he was provided an early release date of March 11, 2025.  (ECF No. 12 at 42-43.)

2    However, upon further review it was determined that Plaintiff's eligibility date was not based on

3    the appropriate in-prison offense, and the Board of Parole Hearings vacated the decision dated

4    December 13, 2024, and conducted a new eligibility review based on the in-prison term which

5    resulted in a nonviolent parole eligibility date of November 3, 2025.  (Id. at 43.)  It was then

6    determined that based on the new date, Plaintiff's earliest possible release date of September 14,

7    2025, controlled.  (Id.)  Plaintiff was released on parole on or about September 14, 2025.  (Id.)

8    Thus, Plaintiff received the minimum procedural due process required under Cooke. See Cooke,

9    562 U.S. at 220; Miller, 642 F.3d at 716-17 (finding that while Oregon statute created a liberty

10   interest in early eligibility for parole, the only question was whether the state provided the

11   prisoner with the minimum procedural due process outlined in Cooke); Stephens v. Kunz, 2019

12   WL 6649021, at *4 (C.D. Cal. Sept. 18, 2019).  Plaintiff's contention that he should have been

13   released earlier constitutes solely a violation of state law and does not state a cognizable federal

14   civil rights claim. See Fields v. Kernan, 2021 WL 1295086, at *2 (E.D. Cal. Apr. 7, 2021)

15   (whether Proposition 57 was improperly construed was a question of California law not

16   cognizable in Section 1983 action); Chubbuck v. Brown, 2020 WL 4818566, at *2 (E.D. Cal.

17   Aug. 19, 2020) (finding claim alleging defendants improperly applied Proposition 57 was not

18   cognizable under Section 1983); Stephens, 2019 WL 6649021, at *3 (finding contention that

19   Proposition 57 was misapplied was not cognizable in a Section 1983 action); Crisp v. Kernan,

20   2018 WL 2771310, at *3-4 (E.D. Cal. June 7, 2018) (explaining that even if plaintiff's release

21   under Proposition 57 was delayed, it did not appear such allegation would state a cognizable civil

22   rights claim and the violation of state regulations, rules and policies of the CDCR, or other state

23   law is not sufficient to state a claim under Section 1983).

24        In addition, Plaintiff had an available administrative The appeal process is initiated by an

25   inmate filing a "Form 602" the "Inmate/Parolee Appeal Form," and describing the specific issue

26   under appeal and the relief requested. "The California prison grievance system has two levels of

27   review. See Cal. Code Regs. tit. 15, §§ 3999.226(a)(1); 3481(a); 3483; 3485 (health care and

28   standard grievances, respectively).  An inmate exhausts administrative remedies by obtaining a

4

1    decision at each level." <u>Reyes v. Smith</u>, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs.

2    tit. 15, § 3084.1(b) (2011)) (repealed); <u>Harvey v. Jordan</u>, 605 F.3d 681, 683 (9th Cir. 2010). The

3    appeals process provides an inmate an opportunity to be heard, and the institutional/appeal

4    response must provide a reasoned statement for the decision.  Here, it is clear that these avenues

5    were available to Plaintiff, and he used such avenues to request parole and to appeal any denial.

6    Indeed, as discussed above, the appeals process provided Plaintiff with due process.  Violation of

7    procedural due process rights requires only procedural correction and not a reinstatement of the

8    substantive right. <u>See, e.g.</u>, <u>Raditch v. United States</u>, 929 F.2d 478, 481 (9th Cir. 1991). In other

9    words, the remedy for the denial of procedural due process is more process.  Here, Plaintiff

10    received "more process" through his appeals.  Accordingly, Plaintiff fails to state a cognizable

11    due process violation.

12    **B.    Retaliation**

13    Retaliation by a state actor for the exercise of a constitutional right is actionable under 42

14    U.S.C. § 1983 even if the act, when taken for different reasons, would have been proper. <u>See</u> <u>Mt.</u>

15    <u>Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 283–84 (1977). Retaliation, though

16    it is not expressly referred to in the Constitution, is actionable because retaliatory actions may

17    tend to chill individuals' exercise of constitutional rights. <u>See</u> <u>Perry v. Sindermann</u>, 408 U.S. 593,

18    597 (1972). A viable claim of First Amendment retaliation entails five basic elements: (1) An

19    assertion that a state actor took some adverse action against an inmate (2) because of (3) that

20    prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

21    Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

22    <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (internal citation omitted).

23    "[T]he denial of a grievance or appeal 'neither constitutes an adverse action that is more

24    than de minimis nor is it sufficient to deter a prisoner of 'ordinary firmness' from further First

25    Amendment activities." <u>Chacon v. Diaz</u>, No. EDCV201898JWHKS, 2020 WL 7214292, at *5

26    (C.D. Cal. Sept. 28, 2020) (quoting <u>Dicey v. Hanks</u>, No. 2:14-CV-2018 JAM AC, 2015 WL

27    4879627, at *5 (E.D. Cal. Aug. 14, 2015) (collecting cases and denying leave to amend because

28    "denial of a grievance does not constitute an adverse action," report and recommendation

1  adopted, No. 214CV2018JAMACP, 2015 WL 6163444 (E.D. Cal. Oct. 15, 2015); see also Allen

2  v. Kernan, No. 316CV01923CABJMA, 2018 WL 2018096, at *7 (S.D. Cal. Apr. 30, 2018)

3  (same), aff'd, 771 F. Appx 407 (9th Cir. 2019); Almy v. R. Bannister, No.

4  313CV00645MMDVPC, 2016 WL 11448946, at *6 (D. Nev. May 23, 2016) ("courts have

5  generally concluded that the denial of a grievance or a disciplinary appeal without more does not

6  meet the requisite threshold of adversity"), report and recommendation adopted sub nom. Almy v.

7  Bannister, No. 313CV00645MMDVPC, 2016 WL 5419416 (D. Nev. Sept. 27, 2016)).

8       Here, Plaintiff does not allege any Defendant denied his release on parole because he filed

9  these grievances and does not claim to have been chilled from exercising any constitutional right.

10  Rather, Plaintiff claims that he was retaliated against when Defendants denied his inmate

11  grievances and improperly vacated the December 13, 2024, determination that he was eligible for

12  release on parole.  However, the denial of an inmate grievances is not "adverse" action to give

13  rise to a claim for retaliation.  See, e.g., Gunn v. Olmstead, 2021 WL 3048359, at *3 (E.D. Cal.

14  July 20, 2021) ("To the extent plaintiff may be attempting to allege that his grievances were

15  denied in retaliation for filing the grievances in the first place, the denial of a grievance does not

16  constitute an adverse action that is more than de minimis and is not sufficient to deter a prisoner

17  of "ordinary firmness" from further First Amendment activities.") (citing Watison v. Carter, 668

18  F.3d 1108, 1114 (9th Cir. 2012)); see also Burciaga v. California Dep't of Corr. & Rehab., 2019

19  WL 8634165, at *8 (C.D. Cal. Sept. 5, 2019) ("Plaintiff was not forced to abandon his First

20  Amendment right; rather, he pursued it individually ... [and] does not explain how [Defendants']

21  instruction[s] to file his administrative grievance [differently]" resulted in the loss of a potential

22  claim for relief).)  Accordingly, Plaintiff fails to state a cognizable claim for retaliation.

23       **C.    Equal Protection**

24       The Equal Protection Clause broadly requires the government to treat similarly situated

25  people equally. Hartman v. California Dep't of Corr. and Rehabilitation, 707 F.3d 1114, 1123

26  (9th Cir. 2013). To state an equal protection claim, a plaintiff must typically allege that

27  " ' defendants acted with an intent or purpose to discriminate against [him] based upon

28  membership in a protected class,' " such as a particular race or religion. Furnace v. Sullivan, 705

F.3d 1021, 1030 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted) (emphasis in original); see also Byrd v. Maricopa Cty. Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (to state an equal protection claim, plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent").

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." Washington v. Davis, 426 U.S. 229, 239 (1976). An equal protection claim may lie when a policy that is neutral on its face has a disproportionate or disparate impact on an identifiable group. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977). However, the disparate impact of a policy is not dispositive. In Washington v. Davis, 426 U.S. 229 (1976), the Supreme Court stated:

> We have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than another. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule that rule racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.

Washington, 426 U.S. at 242 (citation omitted).

The Ninth Circuit has held that the disproportionate impact of a prison's facially neutral policies on an identifiable group does not mean that the policies violated the Equal Protection Clause. Lee v. City of Los Angeles, 250 F.3d 668, 686-87 (9th Cir. 2001) (citing Navarro v. Block, 72 F.3d 712, 716 n.5 (9th Cir. 1995)).  Proof of discriminatory intent or motive must also be present. See, e.g., Personnel Adm'r of Mass v. Feeney, 442 U.S. 256, 279-80 (1979) (finding no evidence state intended to discriminate against women by granting lifetime preference to veterans for civil service positions, even though over ninety-eight percent of veterans in state were male).

To the extent Plaintiff contends that he was denied equal protection of the law because he

7

1   was denied early parole consideration under Proposition 57 in comparison to other similarly

2   situation inmates.  Plaintiff's claim is completely unsupported and purely conclusory as to any

3   disparate impact and does not give rise to a cognizable claim.  Indeed, the complaint contains no

4   allegations that would support an inference of discriminatory intent or motive behind the

5   application of Proposition 57 to Plaintiff.  Accordingly, Plaintiff's equal protection claim fails as

6   a matter of law.

7                                                    **V.**

8                            **ORDER AND RECOMMENDATION**

9         Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly

10  assign a District Judge to this action.

11        Further, it is HEREBY RECOMMENDED that the instant action be dismissed for failure

12  to state a cognizable claim for relief.

13        This Findings and Recommendation will be submitted to the United States District Judge

14  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14)**

15  **days** after being served with this Findings and Recommendation, Plaintiff may file written

16  objections with the Court, limited to 15 pages in length, including exhibits.  The document should

17  be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is

18  advised that failure to file objections within the specified time may result in the waiver of rights

19  on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v.

20  Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

21

22

23  IT IS SO ORDERED.

24  Dated:   **December 9, 2025**      _____

25                                          STANLEY A. BOONE
                                            United States Magistrate Judge

26

27

28